J-A21009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SAMUEL W.B. MILLINGHAUSEN, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREN DRAKE, ROBERT L. HYSLOP, | : | No. 477 EDA 2020 |
| JR., THERESA M. HYSLOP, JOY A. | : | |
| CAPKA, MARYANN DIRENZO, JOHN | : | |
| DOE ONE, JOHN DOE TWO, JOHN | : | |
| DOE THREE, AND JOHN DOE FOUR | : | |

Appeal from the Judgment Entered March 9, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2012-06050

BEFORE:  DUBOW, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 13, 2020**

Appellant, Samuel W. B. Millinghausen, III, appeals from the Judgment entered on March 9, 2020, after the lower court denied Appellant's Motion to Vacate the Award of the AAA Arbitrator ("Motion to Vacate").[1]  Upon review, we agree with the court's conclusion that Appellant failed to establish by clear and precise evidence that he was denied a hearing or that misconduct marred the underlying arbitration proceedings.  Accordingly, the underlying

---

[1] Initially, Appellant appealed from the January 8, 2020 Order denying his Motion to Vacate.  Because this was not a final, appealable order, we issued a Rule directing Appellant to praecipe the common pleas court to enter Judgment.  ***See Dunlap By Hoffman v. State Farm Ins.***, 546 A.2d 1209 (Pa. Super. 1988).  Appellant complied, and the court entered Judgment on March 9, 2020.  Thus, we discharge the Rule and consider Appellant's appeal.

arbitration award is conclusive and binding. We affirm on the basis of the lower court's Opinion filed April 16, 2020.

The parties are well versed in the facts and procedural history of this case. Briefly, in 2006, Appellant contracted with Legal Access Plans, LLC to provide legal services to its plan subscribers ("Contract"). The Contract included an arbitration clause.

In 2012, Appellant commenced defamation litigation in common pleas court against Karen Drake, Robert L. Hyslop, Jr., Theresa Hyslop, Joy A. Capka, and Maryann Direnzo (collectively, "Clients").[2] Clients filed Preliminary Objections to Appellant's Complaint, seeking to compel arbitration. The lower court overruled their Objections, and Clients appealed. Upon review, this Court determined that Clients were third-party beneficiaries of the Contract and that Appellant's claims were within the scope of the arbitration clause; accordingly, we reversed the lower court and remanded for arbitration proceedings. *See Millinghausen v. Drake*, 102 A.3d 540 (Pa. Super. 2014) (unpublished memorandum).

Arbitration proceedings commenced, and Appellant was unsuccessful prosecuting his claims. On January 15, 2019, in accordance with the terms of

---

[2] In addition to Clients, Appellant sued four unnamed defendants. Appellant never identified these individuals.

the Contract, the arbitrator imposed the costs of arbitration and Clients' attorneys' fees upon Appellant.[3]

Appellant filed a Motion to Vacate in the court of common pleas, asserting that the arbitrator lacked jurisdiction to consider Appellant's claims, that he had denied Appellant a fair hearing, and that the arbitration award was unjust. The common pleas court denied the Motion.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The court issued a comprehensive and responsive Opinion.

Appellant raises the following issues:

1. Should the [lower] [c]ourt's denial of Appellant's [Motion to Vacate] be reversed where there was no agreement to arbitrate[,] and the court failed to give *de novo* review[;] Appellees repudiated the alleged agreement to arbitrate[;] . . . the court improperly applied the standard of 42 Pa.C.S. § 7341 to the jurisdiction question[;] the court found an agreement by implication[;] the court implied consideration not in the disavowed document[;] and [the court] improperly relied on earlier decisions and the arbitrator's determinations?

2. Should the [lower] [c]ourt's denial of Appellant's [Motion to Vacate] be reversed where the award was not properly encompassed with[in] [Clients'] counterclaim[;] not filed with AAA as required by their rules[;] and Appellant was denied a full and fair hearing on the claim where the arbitrator denied "All of [Clients'] claims filed and all counterclaim damages (including punitive, contractual[,] lost wages, pain and suffering[,] and emotional distress)", but awarded $381,292,50 [sic] for claims never raised as required by AAA

---

[3] Clients' fees totaled $355,000.00; Administrative fees of the American Arbitration Association were $10,050.00; and compensation due the arbitrator was $42,535.00. Motion to Vacate the Award of the AAA Arbitrator, 2/14/19, Exhibit No. 1 ("Final Award of Arbitrator", 1/15/19, at 6).

- 3 -

rules, denying Appellant an opportunity to a full and fair hearing on the issues?

3. Should the Appellant's Motion to Vacate . . . have been sustained where the record contains clear, precise and indubitable evidence that there was misconduct by [Clients'] and/or the arbitrator[,] which demonstrated fraud, misconduct, corruption and irregularities [that] denied Appellant a full and fair hearing on his claim for defamation?

Appellant's Br. at 6-7 (suggested answers omitted).

We review a court order confirming a common law arbitration award for an abuse of discretion or an error of law. ***Prudential Prop. & Cas. Ins. Co. v. Stein***, 683 A.2d 683, 685 (Pa. Super. 1996).

"Judicial review of a common law arbitration award is severely limited as otherwise arbitration would be an unnecessary stage of litigation, causing only delay and expense without settling the dispute." ***U.S. Spaces, Inc. v. Berkshire Hathaway Home Servs., Fox & Roach***, 165 A.3d 931, 934 (Pa. Super. 2017) (citation omitted).[4] An arbitrator is the final judge of both law and fact, and we shall not reverse a common law arbitration award for a mistake of either. ***F.J. Busse Co. v. Sheila Zipporah, L.P.***, 879 A.2d 809, 811 (Pa. Super. 2005). Thus, neither this Court nor the trial court may review the tribunal's disposition of the merits of the case. ***Id***.

The award of an arbitrator is binding. ***Sage v. Greenspan***, 765 A.2d 1139, 1142 (Pa. Super. 2000) (citation omitted). We may not vacate or modify an award "unless it is clearly shown that a party was denied a hearing

---

[4] This matter proceeded in common law arbitration because the Contract did not reference the Uniform Arbitration Act. ***See Fastuca v. L.W. Molnar & Assocs.***, 950 A.2d 980, 988 (Pa. Super. 2008).

or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S. § 7341. Thus, to challenge an arbitration award successfully, the appellant must establish by "clear, precise, and indubitable evidence" both the underlying irregularity and the resulting inequity. *Gargano v. Terminix Int'l Co., L.P.*, 784 A.2d 188, 193 (Pa. Super. 2001) (internal citation omitted).

Appellant raises three broad issues on appeal. First, Appellant maintains that there was no agreement to arbitrate and that the arbitrator lacked jurisdiction to consider Appellant's claims. *See* Appellant's Br. at 25-55. Second, Appellant contends that we must vacate the arbitration award because Clients never filed a claim for fees and expenses and because the arbitrator had denied Clients' several counterclaims during the arbitration proceedings. *See* Appellant's Br. at 55-63. Third, Appellant alleges several instances of misconduct by the arbitrator such that he denied Appellant a full and fair hearing on his claims for defamation. *See* Appellant's Br. at 63-77.[5]

The Honorable Garrett D. Page has authored a comprehensive, thorough, and well-reasoned Opinion addressing each of Appellant's claims. After a careful review of Appellant's arguments and the certified record, we

---

[5] In his Statement of Questions for the appeal, Appellant asserted that Clients also engaged in misconduct. *See* Appellant's Br. at 7. However, Appellant fails to develop any argument in support of this assertion. *See* Appellant's Br. at 63-77. Thus, we find it waived. *See Sephakis v. Pa. State Police Bureau of Records and Id.*, 214 A.3d 680, 686-87 (Pa. Super. 2019); Pa.R.A.P. 2119(a).

adopt the Opinion as our own and affirm the lower court's decision to deny Appellant's Motion to Vacate. **See** Trial Ct. Op, 4/16/20, at 1-2, 9-10, 14-20 (discussing this Court's dispositive ruling that Appellant's defamation claims were subject to arbitration pursuant to the Contract and that Appellant's claims to the contrary are without merit);[6] 12-14 (concluding that (a) the Contract's arbitration clause granted the arbitrator authority to award costs and fees, (b) the award was supported by evidence, (c) Appellant was given an opportunity to challenge the evidence, and (d) the size of the award reflects Appellant's "dilatory and obdurate conduct", which needlessly prolonged the proceedings); and 6-9, 10-12 ((a) examining relevant portions of the proceedings, (b) finding that Appellant's assertions of misconduct were unfounded and often misleading, and (c) concluding that Appellant failed to demonstrate with clear and precise evidence that he was denied a hearing or that misconduct led to an unjust or inequitable award).

We direct the parties to annex the lower court's April 16, 2020 Opinion to any future filings.

Rule discharged. Judgment affirmed.

---

[6] The lower court also cites to a related appeal by Appellant, involving Legal Access Plans, LLC, in which a panel of this Court similarly determined that the Contract included a valid agreement to arbitrate. **Millinghausen v. Legal Access Plans, LLC**, 60 A.3d 846 (Pa. Super. 2012) (unpublished memorandum), *allocatur denied*, 64 A.3d 632 (Pa. 2013).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/2020

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | | |
|---|---|---|
| SAMUEL W.B. MILLINGHAUSEN, III | : | **Lower Court Docket:** |
| | : | **No. 2012-06050** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| KAREN M. DRAKE, ET AL. | : | **477 EDA 2020** |
| | : | |
| **Defendants** | : | |

## OPINION

**Page, J.**                                                                 *April 15, 2020*

Plaintiff appeals from this Court's Order of January 8, 2020. For the reasons set forth below, Plaintiff's appeal is without merit. Therefore, any claim of error on the part of this Court should be dismissed, and the ruling should be affirmed.

### FACTS AND PROCEDURAL HISTORY

The instant appeal arises from Plaintiff Samuel W.B. Millinghausen, III's challenge to an arbitration award issued by Arbitrator Beitch ("the Arbitrator") on January 15, 2019. *See* Docket Entry 168. In the underlying action, Plaintiff alleges that Defendants Karen Drake, Joy Capka, Maryann DiRenzo, Robert Hyslop, Jr., and Theresa Hyslop—all clients of Plaintiff referred by Legal Access Plans, LLC—made defamatory statements that led to the termination of his relationship with Legal Access Plans, L.L.C. *See* Docket Entry 22. Plaintiff also brought suit against the Legal Access Defendants in a separate action in Montgomery County under Docket Number 2011-13446.

In the separate matter at Docket Number 2011-13446, the Legal Access Defendants requested that the case be remanded to arbitration pursuant to an arbitration clause contained in

1

2006 and 2008 agreements between the parties. Upon the trial court declining to remand the matter to arbitration, the Legal Access Defendants filed an appeal. During the pendency of the appeal in the matter at Docket Number 2011-13446, Defendants under this docket similarly demanded that the instant matter be remanded to arbitration pursuant to the same arbitration clause in the 2006 and 2008 agreements, appealing the trial court's denial of their Motion to Compel Arbitration. Both Pennsylvania Superior Court panels for the matter under Docket Number 2011-13446 and the matter under Docket Number 2012-06050 issued opinions remanding Plaintiff's cases—based on the same agreements and same underlying facts—to arbitration. Plaintiff's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied for the matter at Docket Number 2011-13446 and denied as having been improvidently granted for the matter at Docket Number 2012-06050.

On January 15, 2019, the Arbitrator issued an arbitration award in favor of Defendants and against Plaintiff on his claims for defamation, false light, invasion of privacy, and unpaid bills and ordered that Plaintiff pay Defendants' counsel fees. *See* Docket Entry 181 at Ex. 5. On February 14, 2019, Plaintiff filed a Motion to Vacate the Award of the AAA Arbitrator. *See* Docket Entry 168. In said motion, Plaintiff alleges that fraud, misconduct, corruption, and other irregularities on the part of both the Arbitrator and defense counsel denied him a fair hearing and rendered an unjust, inequitable, and unconscionable award. Plaintiff also contends the arbitration award should be vacated based on the allegation that the 2006 and 2008 documents were not enforceable contracts, thus the Arbitrator lacked jurisdiction in the absence of an enforceable arbitration provision.

On March 22, 2019, Plaintiff filed an Emergency Motion to Retain Jurisdiction and Strike Defendants' Petition to Confirm Arbitration Award, which the Court granted. *See* Docket

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Entries 171; 177. Defendants filed a response in opposition to Plaintiff's Motion to Vacate the Award of the AAA Arbitrator on March 22, 2019. *See* Docket Entry 181. Plaintiff filed a Brief in Support of his Motion to Vacate the Award of the AAA Arbitrator on October 3, 2019, and Defendants filed their own Brief in Support of their earlier opposition on November 4, 2019. *See* Docket Entries 217; 219. Plaintiff filed a Reply Brief in Support of his Motion to Vacate the Award on November 25, 2019. *See* Docket Entry 220. Plaintiff filed an Argument Praecipe, and this Court held oral argument on Plaintiff's Motion to Vacate the Award of the AAA Arbitrator on January 7, 2020. *See* Docket Entries 222-23. Following argument, the Court denied Plaintiff's Motion on January 8, 2020. *See* Docket Entry 224. Plaintiff filed a Motion for Reconsideration, which this Court denied on January 23, 2020. *See* Docket Entries 225-26.

Plaintiff filed a timely Notice of Appeal on January 30, 2020.

## ISSUES

Plaintiff's Concise Statement is reproduced verbatim below:

1. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when it failed to find arbitrator denied Appellant a full and fair hearing where the arbitrator denied Appellant discovery which identified or included information related to the parties who made the defamatory [sic] to Legal Access and/or Robert L. Heston, Jr.
2. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when it failed to find arbitrator denied Appellant a full and fair hearing where the arbitrator denied Appellant discovery which included Legal Access Plans complete file on Appellant.
3. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when the arbitrator denied Appellant a full and fair hearing when Appellees failed to move any exhibit into evidence, ignoring the arbitrator's order to move exhibits, and denying Appellant any meaningful opportunity to object to exhibits.
4. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator denied Appellant a full and fair hearing when the arbitrator required Appellant to participate in oral argument conducted in Florida over the objections of Appellant.
5. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator engaged in *ex parte* discussions of the case with Appellees' counsel following the close of oral argument.
6. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator's award was unjust, inequitable or

unconscionable where it exceeded Appellant's Schedule C income for his practice and his IRS Adjusted Gross Income for ten years and Appellant was denied a full and fair hearing.

7. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator denied Appellant a full and fair hearing when no claim was made based on the falsely alleged arbitration clause of the renounced documents before the close of hearings.

8. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator denied Appellant a full and fair hearing when the arbitrator allowed Appellees to exhaust Appellant economically by refusing to dismiss their frivolous Dragonetti claim for five days of testimony at great financial benefit to Appellees and to the arbitrator.

9. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity where the arbitrator denied Appellant a full and fair hearing when the arbitrator demonstrated bad faith, ignorance of the law and indifference to the justice of the result in reaching an unjust, inequitable and unconscionable award when he stated "I can rule, I believe, that I have jurisdiction of a claim before it's filed."

10. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when he failed to find an irregularity when the arbitrator denied Appellant a full and fair hearing when the arbitrator stated he, [sic] stopped reviewing Appellant's filings midstream.

11. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when where [sic] the Trial Court applied an incorrect standard when it refused to find the arbitrator lacked any jurisdiction to rule in this case.

12. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when the Trial Court failed to properly consider after acquired evidence to determine there was no jurisdiction for the arbitrator to rule in this case.

13. The Trial Court erred as a matter of law and/or fact or committed an abuse of discretion when where [sic] the arbitrator denied Appellant a full and fair hearing on the claim for counsel fees, costs and expenses, where the arbitrator made the award based on a claim never raised at any time during the AAA proceedings.

## ANALYSIS

"Judicial review of a common law arbitration award is severely limited as otherwise arbitration would be an unnecessary stage of litigation, causing only delay and expense without settling the dispute." *U.S. Spaces, Inc. v. Berkshire Hathaway Home Servs., Fox & Roach*, 165 A.3d 931, 934 (Pa. Super. Ct. 2017) (citation omitted). "The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either." *McKenna v. Sosso*, 745 A.2d 1, 4 (Pa. Super. Ct. 1999) (citation omitted). "Neither [the appellate court] nor the trial court may retry the issues addressed in arbitration or review the

4

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

tribunal's disposition of the merits of the case." *Id.* There exists a "high burden upon the party who excepts to an arbitration award," with "every presumption [being] in favor of [the arbitration award's] validity." *Reinhart v. State Auto. Ins. Ass'n*, 363 A.2d 1138, 1142 (Pa. Super. Ct. 1976). The following standard applies in reviewing an arbitration award in a common law arbitration:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa. C.S.A. § 7341; *see also P G Metals Co. v. Hofkin*, 218 A.2d 238, 239-40 (Pa. 1966) (citations omitted) ("[A]n award of arbitrators in a common law arbitration is conclusive and binding and cannot be attacked unless it can be shown by clear, precise and convincing evidence that the parties were denied a hearing, or there was fraud, misconduct, corruption, or some other irregularity which caused the rendition of an unjust, inequitable or unconscionable award.").

"To prevail on these grounds, actual fraud must be shown, involving collusion with one of the parties, or misconduct intended to create a fraudulent result." *Gwin Engineers, Inc. v. Cricket Club Estates Dev. Grp.*, 555 A.2d 1328, 1329 (Pa. Super. Ct. 1989) (citing *Mellon v. Travelers Ins. Co.*, 406 A.2d 759, 761 (Pa. Super. Ct. 1979)). "An argument that the arbitrators were prejudiced or partial, or that they reached an award so unjust that it constitutes constructive fraud, will not be heeded." *Mellon*, 406 A.2d at 761. "Similarly, an 'irregularity' will not be found simply upon a showing that an incorrect result was reached." *Id.* "In an arbitration proceeding, an irregularity refers to the process employed in reaching the result of the arbitration,

5

not to the result itself." *Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Assoc., Inc.*, 477 A.2d 482 (Pa. Super. Ct. 1984).

## I. DISCOVERY/EVIDENTIARY ISSUES

Plaintiff's first three issues generally boil down into a single overarching error—that this Court erred in not finding the Arbitrator denied Plaintiff a hearing with regard to several discovery issues. Preliminarily, the Court notes that none of Plaintiff's allegations of error related to discovery amount to denial of a hearing or "fraud, misconduct, corruption or other irregularity" as required to vacate the award—particularly where Plaintiff was afforded the opportunity for extensive discovery. In his first two issues, Plaintiff alleges that the Arbitrator denied him discovery related to the identities of those who made defamatory statements and Legal Access Plans' complete file on himself. Here, it is factually untrue that the Arbitrator denied Plaintiff discovery on the identities of the individuals who allegedly made defamatory statements. The Arbitrator ordered that Defendants disclose the identities of said individuals by providing Plaintiff with responsive documents. *See* Docket Entry 219 at Ex. 21. When Plaintiff expressed dissatisfaction with Defendants' lack of production of mailing addresses for said individuals, the Arbitrator and Defendants offered to conference this issue, to which Plaintiff declined the need to further pursue this discovery in the following email:

> I [Plaintiff] do not wish to discuss the issue further. Ms. Wynkoop [defense counsel] has stated LAP [Legal Access Plans] does not have information on the individuals they have offered as making the statements they provided. I do not wish to spend time or resources listening to their assertions. I believe there is no issue for Mr. Beitch [the Arbitrator] to address and request you do not schedule any conference.

*See id.* at Ex. 23.

6

Similarly, the Arbitrator addressed Plaintiff's concerns related to production of a "complete file" on Plaintiff, finding that such a file likely does not exist and would nevertheless be unnecessary to prove his case in light of Plaintiff being afforded extensive discovery:

> Claimant continues to object to a non-existing refusal to grant him discovery. I ordered that he be supplied with all germane requested documents and this was done. He continues to want "his file" as if this will contain additional pejorative statements about him proving his case. I believe that there is not a general file labeled and maintained as such. There were multiple days of Hearings including testimony of the Individual Respondents and employees under oath. Claimant had ample opportunity to develop and prove his case during the Course of Arbitration).

*See* Docket Entry 181 at Ex. 5, ¶ C.

Ultimately, the Arbitrator determined in his Final Award that Defendants sufficiently complied with his order compelling discovery. *Id.* The Court is bound by 42 Pa. C.S. §7341 and cannot disturb the Arbitrator's findings of law and fact—particularly here, where Plaintiff's allegations of being denied a hearing by way of denial of discovery are especially unavailing.

Plaintiff's third issue alleges the Court erred in not finding Plaintiff was denied a hearing due to the alleged failure of Defendants to move exhibits into evidence—denying Plaintiff the opportunity to object to exhibits. The Court finds this claim without merit. Here, the Arbitrator noted in his Final Award that both parties—not just Defendants—were "not diligent in moving their exhibits into evidence." *See* Docket Entry 181 at Ex. 5, ¶ M. In fact, Defendants allege in their opposition that Plaintiff submitted new testimony and documentary evidence after the close of the hearings. Despite Plaintiff's own failure to diligently move exhibits into evidence, the Arbitrator nevertheless allowed Plaintiff to submit the evidence he felt necessary to support his case. The Arbitrator also noted in his Final Award that in rendering his decision, he "accept[ed] all the proffered exhibits for the consideration they deserve, noting that some of these lack

7

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

foundation and some are of limited probative value." *Id.* In this case, Defendants submitted exhibits that were marked throughout the evidentiary hearing and referenced with detailed citations in corresponding motions and briefs. *See* Docket Entry 219. As such, Plaintiff was afforded the opportunity to object to exhibits through replies to Defendants' briefs and throughout the five days of hearings, and the Arbitrator cannot be said to have denied Plaintiff a hearing as required to vacate the award.

## II. <u>ORAL ARGUMENT</u>

In issues four and five, Plaintiff alleges this Court erred in not finding irregularities in the oral argument conducted at the close of arbitration. First, Plaintiff argues that that the scheduling of closing arguments in Florida over his objections denied him a hearing or resulted in an irregularity in the proceedings. This claim lacks merit. Plaintiff cannot be said to have been denied a full and fair hearing after being given the benefit of five days of evidentiary hearings over the course of two years and the opportunity to attend closing arguments in-person or telephonically. *See* Docket Entry 181 at Ex. 9. The Court notes that at the close of the hearings, the parties agreed they preferred in-person closing arguments, with Plaintiff making the following on-the-record statement when Florida was raised as a potential location:

> **MR. MILLINGHAUSEN:** I have a suggestion. If you're going to Florida, I think Mr. Wagner [defense counsel] will fly me and the family down.

*See* Docket Entry 219 at Ex. 17 (N.T. Hearing 5/14/18, pp. 410-11).

Consistent with Plaintiff's comment, Defendants assert both in their brief in support of their opposition and during oral argument on Plaintiff's Motion to Vacate the Arbitration Award that defense counsel did in fact offer to pay for Plaintiff's travel to closing argument in Florida. *See id.*; *see also* N.T. Hearing 1/7/20, pp. 48; 50-51. The record before the Court indicates the

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Arbitrator offered to make similar accommodations to Plaintiff's objections to Florida, offering that the parties could forego closing arguments or conduct them telephonically. *See* Docket Entry 219 at Ex. 17 (N.T. Hearing 5/14/18, pp. 410-11); *see also id.* at Ex. 9; 18. That Plaintiff is now unhappy with his decision to not make an in-person appearance at closing arguments does not rise to the level of "fraud, misconduct, corruption or other irregularity" or denial of a hearing required for the Court to vacate the award.

Second, Plaintiff contends that alleged *ex parte* discussions overheard on the teleconference at the end of closing arguments constitute an irregularity providing justification to vacate the award. Plaintiff alleges that after closing arguments were finished, he could overhear "banter" and defense counsel answering the Arbitrator's question about where to find the language concerning "access to clients" in the 2006 agreement. Defendants contend that defense counsel merely answered a question of the Arbitrator's during closing arguments. Even taking Plaintiff's version of events to be true, the Court finds that Plaintiff has not established that the alleged conduct constitutes an irregularity or denial of a hearing, where the question of whether "access to clients" was a form of consideration was already belabored at length over the course of five days of evidentiary hearings. Thus, Plaintiff's fourth and fifth issues must fail.

## III. OTHER IRREGULARITIES WITH ARBITRATOR

Plaintiff also raises a number of other errors associated with the Court declining to find irregularities in the conduct of the Arbitrator in issues seven, eight, and ten. In issue seven, Plaintiff alleges an irregularity in the proceedings and denial of a hearing by way of the fact that "no claim was made based on the falsely alleged arbitration clause[.]" In other words, Plaintiff contends the matter should not have been remanded to arbitration where Plaintiff's claim was for defamation and not breach of contract. Here, the Superior Court already soundly rejected

9

Plaintiff's position on this exact issue in his earlier appeal, finding Defendants are third party beneficiaries of the contract and that the broad language of the arbitration clause covers claims "premised upon defamation and slander"—allowing the defamation claim to go to arbitration over Plaintiff's objections. *See Millinghausen v. Legal Access Plans, LLC*, 60 A.3d 846 (Pa. Super. Ct. 2012) (unpublished memorandum). Specifically, the Superior Court provided its reasoning for the agreement to arbitrate extending to Defendants in a defamation claim as follows:

> We now turn to whether Millinghausen's tort claims against Appellants are within the scope of the arbitration agreement. The trial court determined that Millinghausen's defamation claims against Appellants were outside the scope of the arbitration clause. *See* Trial Court Opinion, 8/15/03, at 8. We disagree with the trial court based on our prior conclusion that the arbitration clause was broad, and applied to Millinghausen's breach of contract claim against Legal Access, which was premised in part on Appellants' alleged defamatory statements. *Millinghausen, supra,* at 10. **We are not persuaded that the current action is outside the scope of the broad arbitration clause by which Millinghausen is bound.** Therefore, based on our prior determinations in *Elwyn, Callan, Pisano, Schoellhammer's Hatboro Manor,* and Millinghausen's action against Legal Access, we reverse the trial court's refusal to compel this action to arbitration.

*See Millinghausen v. Drake*, No. 1205 EDA 2013 (Pa. Super. Ct. 2014) (emphasis added).

Thus, the Superior Court already reversed the trial court and determined arbitration is appropriate—despite the claim being one of defamation and not breach of contract—and Plaintiff's issue seven must be dismissed.

Plaintiff also alleges the Court erred in not finding an irregularity or denial of a hearing where the Arbitrator allowed Defendants to present their Dragonetti claim during the hearings. In this case, both Plaintiff and Defendants raised Dragonetti claims, which the Arbitrator ultimately dismissed in his Final Award. That the Arbitrator permitted both parties to assert counterclaims

10

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

can hardly be said to constitute "clear, precise and convincing evidence" of denial of a hearing or "fraud, misconduct, corruption, or some other irregularity" as required by the standard set forth in 42 Pa. C.S.A. § 7341. Insofar as Plaintiff finds the Arbitrator misapplied the law or misinterpreted facts in not dismissing Defendants' Dragonetti claim sooner, a mistake of law or fact is not subject to judicial review for common law arbitration. To the extent that Plaintiff alleges error in Defendants' Dragonetti claim contributing to additional costs for Plaintiff, the Court notes that the Arbitrator identified Plaintiff's own legal maneuvers as increasing the time and money spent on the proceedings, as will be discussed in Section IV *infra*.

In issue ten, Plaintiff alleges an irregularity and denial of a hearing where the Arbitrator stated he stopped reviewing Plaintiff's filings "midstream." Initially, the Court notes that the Arbitrator never proclaimed to refuse to review Plaintiff's filings altogether, but rather, stated the following:

> **MR. MILLINGHAUSEN:** Well, we're not necessarily agreeing to that. We do not necessarily agree to an arbitration. We agreed to allow the opportunity for a fair hearing. That's why we are here.
> **ARBITRATOR BEITCH:** Okay. I take exception to that. We already had the issue early on in the proceedings. You objected to arbitration. And everybody knows, there is a whole case history here where the Pennsylvania Court system dealt with whether arbitration was required in this case. And I believe the ultimate ruling was, and you filed an objection, stating, I believe correctly, that the ultimate decision is mine as to whether I have jurisdiction. And in midstream, you made a filing in which you, I believe, agreed to waive your argument against the arbitration and proceed. Said a nice thing or two about me in that, and I accepted it verbatim. […]
> **ARBITRATOR BEITCH:** Let me cut you short a moment. I don't want us to get on sidetracks. What I am trying to determine right now is whether you have agreed to arbitration, or I misunderstood what your pleading was. And [if] you are not agreeing or renewing your objection. In which case, I will hear further argument on it. I stopped reviewing your filings in midstream based on your representation that you find arbitration

11

> acceptable, so I don't want us to spend our precious time now debating the issue. You both briefed it for me.

*See* Docket Entry 219 at Ex. 22 (N.T. Hearing 10/2/17, pp. 8:7-9:2; 11:2-13).

As seen by the excerpted language, the Arbitrator's statement about stopping review of Plaintiff's filings is couched in the context of the parties having to continuously revisit the issue of the Arbitrator's jurisdiction throughout the proceedings due to Plaintiff's repeated objections. In essence, Plaintiff takes a single out-of-context statement from the Arbitrator and attempts to frame it as the Arbitrator having completely neglected to perform his duties—despite ample record evidence suggesting the Arbitrator considered the parties' briefs and arguments in making a reasoned determination of his jurisdiction. Accordingly, the Court finds that Plaintiff has not identified with "clear, precise and convincing evidence" either denial of a hearing or "fraud, misconduct, corruption, or some other irregularity" as required by the standard set forth in 42 Pa. C.S.A. § 7341. Thus, there was no error in this Court's denial of the Motion to Vacate the Arbitration Award.

## IV. ARBITRATION AWARD

Plaintiff's sixth and thirteenth issues both allege error in the Court having not found irregularity associated with the amount and makeup of the arbitration award itself. Specifically, Plaintiff alleges that the award is unjust, inequitable, or unconscionable as excessive in relation to his income and that the Arbitrator had no basis for awarding counsel fees, costs, and expenses as a component of the award. With regard to Plaintiff's claim that his personal financial situation merits vacating the award, Plaintiff provides no legal or factual support to establish that the size of the arbitration award in this case constitutes "clear, precise and convincing evidence" of "fraud, misconduct, corruption, or some other irregularity" as required by the standard set forth in 42 Pa. C.S.A. § 7341; *PG Metals Co.*, 218 A.2d at 239-40. Of note, Plaintiff makes no

Case# 2012-06050-0237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

allegation in his Motion to Vacate or corresponding brief that the amount awarded by the Arbitrator exceeded the actual fees and costs in Defendants' fee petitions.

Here, the Arbitrator identified Plaintiff's "multiple motions and other expensive and time consuming actions," "continual[] resist[ance]" of arbitration, "obdurate insistence on presenting and renewing multiple unfounded positions," and "unfocused and slow-paced presentation of the evidence" as reasons meriting the allocation of counsel fees, costs, and expenses in his Final Award. *See* Docket Entry 181 at Ex. 5, ¶ K. Given that the Arbitrator identified Plaintiff's own dilatory and obdurate conduct as a primary factor in contributing to the "expensive" and "time consuming" nature of the arbitration, this Court notes that Plaintiff need look no further than his own conduct with respect to raising a complaint over the size of the arbitration award. Plaintiff also cannot claim to have been denied a full and fair opportunity to challenge Defendants' counsel fees and costs, where Plaintiff was given the opportunity to submit objections to Defendants' fee requests and additional time to supplement said objections. *See* Docket Entry 181 at Ex. 11. That the Arbitrator did not agree with Plaintiff's objections does not indicate that his conduct rose to the level of "fraud, misconduct, corruption, or some other irregularity" necessary for the Court to justify vacating his award, thus issue six must fail.

As for Plaintiff's contention that the Arbitrator had no basis to award counsel fees, costs, and expenses due to Defendants' allegedly not claiming said items, this claim lacks merit. Here, the arbitration clause of the underlying agreement at issue specifically granted the Arbitrator the authority to require Plaintiff to pay counsel fees and costs, providing that "Each party shall bear the costs of its own attorneys' fees in connection with an arbitration **unless such costs are otherwise allocated by the arbitrator.**" *See* Docket Entry 181 at Ex. 1, § 11 (emphasis added). Accordingly, the Arbitrator abided by the arbitration clause in § 11 of underlying agreement in

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

allocating counsel fees, costs, and expenses to Plaintiff in his Final Award. *See id.* at Ex. 5, ¶ K. Therefore, to the extent that Plaintiff argues there was no "claim" for counsel fees, costs, and expenses, the Arbitrator did in fact have full authority to award such allocations, and Plaintiff's thirteenth issue must be dismissed.

## V. <u>ARBITRATOR'S JURISDICTION</u>

Plaintiff raises similar allegations of error in issues nine, eleven, and twelve, all of which relate to the claim that the Arbitrator lacked jurisdiction to rule in this case. Essentially, Plaintiff argues that the two agreements underlying the action were not enforceable contracts, making the arbitration clause unenforceable. Preliminarily, the Court will note that the issue of the Arbitrator's jurisdiction came before the Superior Court twice before, with the Superior Court twice finding that there was an enforceable contract requiring each of Plaintiff's lawsuits be remanded to arbitration. Specifically, the Superior Court opined the following on the issue of the contract's enforceability:

> Accordingly, we found in *Millinghausen* that Millinghausen and Legal Access entered into a valid agreement to arbitrate, a conclusion with which the trial court agreed after conducting its own analysis. Trial Court Opinion, 8/15/13, at 4-7 (**"It is clear to this Court, following a review of the Agreement [between Millinghausen and Legal Access], that a valid arbitration agreement exists."**). <u>**We agree with both the *Millinghausen* panel from our Court and with the trial court.**</u>

*See Millinghausen v. Drake*, No. 1205 EDA 2013 (Pa. Super. Ct. 2014) (emphasis added).

The Superior Court in Plaintiff's lawsuit against the Legal Access Defendants also found that the same 2006 document underlying the instant action was an enforceable contract, in addition to finding that Plaintiff already admitted as much:

> In this case, the parties entered a Network Provide agreement on January 27, 2006…In the present case, **Appellee [Plaintiff] does not contest the validity of the agreement to arbitrate**; rather, he

14

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

maintains that his present action is outside its scope because it pertains to slander and defamation and Appellant's re-publication of slander and defamation.

*See Millinghausen v. Legal Access Plans, LLC*, 60 A.3d 846 (Pa. Super. Ct. 2012) (emphasis added).

Further, the Arbitrator made his own independent evaluation as to the issue of his jurisdiction after multiple rounds of briefing and argument during the evidentiary hearings:

> Claimant continued/continues to object to AAA jurisdiction despite his written concession in the course of initial argument on the issue. He asserts that the Agreement of the Parties was not supported by legal consideration.
>
> **The Agreement offers possible consideration of Claimant for client referrals in exchange for his agreement to terms governing the resulting relationships.** Referrals ensued and Claimant valued the resultant benefits conferred upon him. He also objects that he strike the provision dealing with indemnity and that the Heston Respondents did not sign his amended version. This objection is moot given my finding that the indemnity clause is not applicable to this litigation, even if not stricken.
>
> **The parties to the writing, acted as if the Agreement was valid and in force, and Claimant cited to it multiple times before deciding to contest it.** The Agreement was terminable without cause by either party and **Claimant chose to accept its benefits** in the course of dealings and not to terminate it despite his (one) objection to the language.
>
> **<u>Thus, the Agreement which provides for AAA jurisdiction and the applicability of its rules is valid and enforceable.</u>**

*See* Docket Entry 181 at Ex. 5, ¶ A (emphasis added).

Plaintiff himself even offered contradictory statements as to whether he was conceding to or objecting to the Arbitrator's jurisdiction during the evidentiary hearings:

> **MR. MILLINGHAUSEN:** That's why I want to proceed. At least if you give me a fair hearing [sic] and I end up with a reasonable and appropriate judgment, then the arbitrability is not an issue.
> **ARBITRATOR BEITCH:** Well, I think that puts you as the ultimate determiner in this case rather than me a the rules and

15

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

customs would apply. And I can't proceed with arbitration with you having a right to pull a veto out of your pocket. [...]

**ARBITRATOR BEITCH:** I am not putting you to a choice other than whether you are continuing to pursue your objection to my jurisdiction.

**MR. MILLINGHAUSEN: I'm not.**

**ARBITRATOR BEITCH:** But you reserve the right, I thought I heard you say.

**MR. MILLINGHAUSEN:** No. No. What I'm saying is I never agreed to it. There is a difference.

**ARBITRATOR BEITCH:** Yes, there is.

**MR. MILLINGHAUSEN:** I'm not agreeing to it but – I'm not agreeing you have authority. I am agreeing to be here and participate and you will make a ruling. **And any objection to that ruling, any appeal from that ruling will be based on other issues, <u>not on whether you have jurisdiction because the Superior Court already decided that.</u>**

*See* Docket Entry 219 at Ex. 3 (N.T. Hearing 10/2/17, pp. 15:1-10; 17:4-21) (emphasis added).

Although Plaintiff later revoked his consent to jurisdiction in the same day of hearings, the point remains that the Arbitrator addressed the basis for his finding that he had jurisdiction at multiple points in the proceedings and in his Final Award, after having engaged with the briefs and arguments of the parties. Thus, Plaintiff's attempt to cherry-pick the Arbitrator's statement "I can rule, I believe, that I have jurisdiction of a claim before it's filed" to allege the Arbitrator demonstrated "bad faith, ignorance of the law and indifference to the justice of the result" in issue nine is unavailing. A close reading of the hearing transcripts reveals that the Arbitrator's full statement was as follows: "I can rule, I believe, that I have jurisdiction of a claim before it's filed. I can look at the language of the agreement to arbitrate and say that any particular claim whether or not filed with AAA is before me." *See* Docket Entry 219 at Ex. 3 (N.T. Hearing 1/11/18, pp. 51:22-52:3) (emphasis added). The Arbitrator proceeded to explain that his authority to rule on Plaintiff's claims derives from the arbitration agreement, to which Plaintiff again insisted "there is no agreement to arbitrate, there is no contract"—an issue already conclusively

16

ruled on by the Superior Court. *See id.* (N.T. Hearing 1/11/18, pp. 51:22-52:23). Thus, while the crux of Plaintiff's objection to jurisdiction is that the Arbitrator wrongly found there was an enforceable contract, such an argument is unpersuasive in the face of two Superior Court decisions finding a binding arbitration agreement and the Arbitrator's sound explanation for finding an enforceable contract as detailed in his Final Award. Consequently, Plaintiff's allegation that the Arbitrator demonstrated "bad faith, ignorance of the law and indifference to the justice of the result" in asserting he had jurisdiction is without merit.

Next, Plaintiff claims in issue eleven that the Court improperly failed to consider "after acquired evidence" when deciding the question of the Arbitrator's jurisdiction. Plaintiff contends that testimony from Robert Heston and Charlie Jacquo, President and Director of Network Management of Legal Access Plans respectively, establishes that the underlying 2006 and 2008 documents were not contracts. Unfortunately for Plaintiff, this "after acquired evidence" in no way establishes the absence of an enforceable arbitration agreement. For one, the Heston testimony cited by Plaintiff in his brief and Motion for Reconsideration refers to the 2008 document. Here, the Superior Court found that the 2006 document was an enforceable arbitration agreement, making said testimony of no moment in the Superior Court's finding that an arbitration agreement existed. Second, Plaintiff cites Charlie Jacquo's testimony that Plaintiff was "not officially" a network provider pursuant to the 2006 document as proof of said document not being a contract—conveniently omitting that she also testified that Legal Access Plans would not have continued giving Plaintiff client referrals unless a contract existed:

> Q. Okay. You don't do business with people you don't have contract with; do you?
> A. No.

*See* Docket Entry 219 at Ex. 17 (N.T. Hearing 5/14/18, pp. 386:13-16).

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff also cites testimony from Defendants' expert to argue there was no consideration between Plaintiff and Legal Access Plans and by extension, no enforceable arbitration agreement. Tellingly, Plaintiff cherry-picks the defense expert's statement that Legal Access Plans had no obligation to give Plaintiff business to suggest a lack of consideration but ignores key portions of the testimony—including the defense expert's next words specifically testifying to the fact that there was consideration:

> Q. Now, you said in your testimony that Legal Access Plans had no obligation to give me [Plaintiff] business. Is that correct?
> A. Yes.
> Q. They had no obligation?
> A. No obligation.
> Q. They had not [sic] obligation at all?
> A. Correct.
> Q. Okay. And you've seen the document offered as a contract? Correct?
> A. I've seen the contract.
> Q. Okay. **Now what in the agreement provides consideration to me? What is the benefit of the contract, the alleged contract, that I received?**
> **A. Access.**
> **Q. Access?**
> **A. Access to putative clients.**

*See* Docket Entry 168 at Ex. 25 (N.T. 1/12/18, pp. 196:12-197:1-7) (emphasis added).

In the absence of any new evidence supporting either absence of a valid arbitration agreement or the conclusion that the Superior Court would have ruled differently had the new testimony been before it, Plaintiff's allegation of error in issue eleven fails. The Court notes that the same 2006 and 2008 documents were before the Superior Court when it ordered arbitration and that that the new testimony cited by Plaintiff was before the Arbitrator when he issued his Final Award. What Plaintiff establishes now is not that the Superior Court was tricked into relying on the prior Superior Court Opinion of *Millinghausen v. Legal Access Plans, LLC* and incomplete information when it found an enforceable contract in the instant matter, but rather,

18

that continued discovery and arbitration hearings further confirmed the existence of an offer, consideration, and acceptance. Thus, Plaintiff's claim that "after acquired evidence" establishes the Arbitrator's lack of jurisdiction must be dismissed.

Finally, Plaintiff's claim that the Court applied an incorrect standard when considering whether the Arbitrator lacked jurisdiction lacks merit. In making this argument, Plaintiff relies on the *Civan* case, which is inapposite to the matter before the Court. In *Civan*, the Superior Court found that "the narrow standard of review derived from section 7341 is not applicable when reviewing a petition to vacate based upon a claim that the parties do not have a valid agreement to arbitrate." *Civan v. Windemere Farms, Inc.*, 180 A.3d 489, 499 (Pa. Super. Ct. 2018). Of significance, however, is a key difference between the facts in *Civan* and here. In the instant case—unlike in *Civan*—the Superior Court already made a determination as to the Arbitrator's jurisdiction to rule and Defendants' status as third-party beneficiaries, ordering the matter remanded to arbitration. By contrast, the *Civan* Court made no determination as to whether there was an enforceable arbitration agreement as it related to a particular non-party, necessitating the need for the trial court to look beyond the standard of 42 Pa. C.S.A. § 7341 and determine whether the award should be vacated for lack of jurisdiction as to this non-party:

> Therefore, because Gambone is not a party to the Agreement and there was **no court order specifically mandating Gambone's submission to arbitration**, the arbitration panel exceeded its power by determining that the panel had jurisdiction over Gambone.

*Civan*, 180 A.3d at 499 (Pa. Super. Ct. 2018) (emphasis added).

*Civan* clearly provides that the arbitration panel exceeded its power only because it assumed jurisdiction despite there being "no court order specifically mandating...submission to arbitration." *Id.* The inapplicability of *Civan* could not be more clear here, where the Superior

19

Court in this case specifically ordered the matter be submitted to arbitration. The Arbitrator cannot be said to have exceeded his power in exercising jurisdiction over Plaintiff where such a court order mandating arbitration existed, and the Court need not have applied a standard other than 42 Pa. C.S.A. § 7341. Thus, Plaintiff's twelfth issue lacks merit.

Even if *Civan* were to govern in this case and the Court considers whether Plaintiff "was bound to arbitrate this dispute in the first place" rather than limit review pursuant to 42 Pa. C.S.A. § 7341, Plaintiff's claim for lack of jurisdiction still fails. As discussed *supra,* none of Plaintiff's "after acquired evidence" meaningfully changes the record that was before the Superior Court when it examined the same two documents and found an enforceable agreement to arbitrate. Further, the proffered new testimony was before the Arbitrator at the time he made a determination as to his jurisdiction and rendered his Final Award. As for Plaintiff's allegation of lack of consideration, a full reading of the defense expert's testimony plainly provides that consideration was in the form of access to clients. Essentially, Plaintiff requests that this Court find no contract exists where a different trial court Judge, two Superior court panels, and the Arbitrator all found otherwise. After careful review of the extensive record before it and having heard oral argument, the Court finds insufficient support to do so. Whether analyzing Plaintiff's claims through the lens of 42 Pa. C.S.A. § 7341 or considering jurisdiction under a separate standard as requested, Plaintiff has failed to establish he is entitled to relief.

## CONCLUSION

For all of the aforementioned reasons, this Court's decision and order should be

**AFFIRMED.**

This Order has been E-filed on
Served via e-filing to the parties of record
Interoffice mail to:
Court Administration, Civil Division
_/s/ *Wanda L. Barbee*_____
Secretary

**BY THE COURT:**

_/s/ *Garrett D. Page*_____
GARRETT D. PAGE,          J.

Case# 2012-06050-237 Docketed at Montgomery County Prothonotary on 04/16/2020 9:22 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.